UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| CARRIE D. ELLIOT,<br><br>      Plaintiff,<br><br>v.<br><br><br><br>TERRY GRAHAM, SR., in his official capacity, and RICHLAND COUNTY BOARD OF ELECTIONS AND VOTER REGISTRATION.<br><br>      Defendants. | Case No. _____<br><br>Judge:<br><br>Magistrate Judge: |

## I. NATURE OF THE ACTION

1. Plaintiff Carrie D. Elliott is an individual with disabilities (lupus and diabetes) who has been prohibited by Defendant Richland County Board of Elections and Voter Registration and Defendant Terry Graham, Sr., interim director of the Richland County Board of Elections and Voter Registration, from participating in the Primary Election on June 9, 2020 on the basis of her disabilities in violation of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973, and Section 2 of the Voting Rights Act ("VRA"). She is African American and a lawfully registered voter eligible to vote absentee in the June 9, 2020 primary election. Plaintiff requests immediate declaratory and injunctive relief to allow her to complete and submit an absentee ballot so that she can exercise her fundamental right to vote.

## II. JURISDICTION AND VENUE

1

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which provides for original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

3. This Court also has jurisdiction over Plaintiff's claims for injunctive and declaratory relief pursuant to the ADA, Rehabilitation Act, the VRA, and 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

4. Venue is proper in the District of South Carolina, Columbia Division, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and because Defendants reside in this district.

### III. PARTIES

5. Plaintiff is an individual with disabilities (lupus and diabetes).

6. Because of her disabilities, Plaintiff is currently strictly social distancing at home in Richland County. She is unable to leave home without risking her health amid the COVID-19 pandemic.

7. Plaintiff is a registered voter whose county of residence is located in Richland County, South Carolina.

8. Defendant Terry Graham, Sr. is the Interim Director of Voter Registration & Elections for the Richland County Board of Elections and Voter Registration and is sued in his official capacity. Defendant Graham is the executive head of the Richland County Board of Elections and Voter Registration and has the statutory duty to administer elections, including the Primary Election of June 9, 2020, for residents of Richland County.

9. Defendant Richland County Board of Elections and Voter Registration has the statutory duty to administer elections, including the Primary Election of June 9, 2020, for residents of Richland County.

## IV. FACTUAL ALLEGATIONS

10. On or about May 23, 2020, Plaintiff mailed to the Richland County Board of Elections and Voter Registration an application for an absentee ballot pursuant to S.C. Code Ann. §§ 7-15-320 and 7-15-320 (as amended by S.J. Res 635, 123rd Gen. Assemb. (2020), permitting all qualified electors to vote by absentee ballot for the June 9, 2020 Primary Election) so that she could vote in the Primary Election on June 9, 2020 by absentee ballot.

11. Plaintiff stated in her absentee ballot application that Plaintiff's absentee ballot should be based on and mailed to Plaintiff's home address on Rice Terrace Drive in Columbia.

12. On or about May 25, 2020, Plaintiff received an absentee ballot. The absentee ballot was based on her previous address on White Gables Drive in Columbia, which is located in a different precinct and election district. As such, the absentee ballot includes a number of races in which Plaintiff is not eligible to vote. When Plaintiff attempted to fill out her absentee ballot, she noticed the error.

13. On June 4, 2020, Plaintiff called the Richland County Board of Elections and Voter Registration to inquire about receiving a corrected absentee ballot. Plaintiff was informed that she could send an email to a staff member at the Richland County Board of Elections and Voter Registration to have a new ballot printed based on her correct domicile information. On June 5, 2020, Plaintiff sent a follow up email to the staff member providing her correct address and forwarded this email to Defendant Graham.

14. In December 2019, Plaintiff updated her mailing address with the South Carolina Department of Motor Vehicles (DMV). On South Carolina's online voter information database, "SCVotes," Plaintiff is listed as an active registered voter residing at her correct current address, but her prior, incorrect address is still listed under the website's "Voter Information" area. The

SCVotes website further lists that Plaintiff's correct address was reported to SCVotes by the South Carolina DMV on December 4, 2019.

15. The Richland County Board of Elections and Voter Registration informed Plaintiff that her updated absentee ballot was mailed out to her on Friday, June 5, 2020. As of June 9, 2020, Plaintiff has not yet received her absentee ballot. Plaintiff has attempted to contact Defendants to requested that Defendants grant her reasonable accommodations to allow her to participate in the Primary Election on June 9, 2020, including by submitting her absentee ballot by fax or email, by provisional ballot, or by sending employees from the Richland County Board of Elections and Voter Registration to deliver the absentee ballot to Plaintiff personally on June 9, 2020. She has yet to receive a response from Defendants.

16. Defendants failure or refusal to respond to Plaintiff's requests are effectively prohibiting Plaintiff from voting in the Primary Election on June 9, 2020.

## V. CAUSES OF ACTION

17. Plaintiff incorporates paragraphs 1 through 16 of her Complaint as if fully rewritten herein.

### TITLE II OF THE AMERICANS WITH DISABILITIES ACT

18. Plaintiff has a medical condition that substantially limits one or more major life activities and therefore has a disability as defined by Title II of the Americans with Disabilities Act. 42 U.S.C. § 12102; 28 C.F.R. § 35.104.

19. Plaintiff is a qualified individual with a disability because, with or without reasonable modifications to rules, policies, or practices, she meets the essential eligibility requirements for participation in the Primary Election of June 9, 2020. 28 C.F.R. § 35.104.

20. Defendants are public entities within the meaning of Title II of the ADA. 42 U.S.C. § 12131(1); 28 C.F.R. § 35.104.

21. Title II of the ADA prohibits a public entity from subjecting a qualified individual with a disability to discrimination or excluding him or her from participation in or denying him or her the benefits of its services, programs, or activities by reason of such disability. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

22. Title II of the ADA requires a public entity to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7).

23. Defendants have discriminated against Plaintiff by their refusal to modify their policies, practices, or procedures to avoid discriminating against Plaintiff on the basis of her disability.

## SECTION 504 OF THE REHABILITATION ACT OF 1973

24. Plaintiff incorporates paragraphs 1 through 26 of her Complaint as if fully rewritten herein.

25. Plaintiff is a person with a disability within the meaning of Section 504 of the Rehabilitation Act of 1973. ("Section 504"), 29 U.S.C. § 794(a), and its implementing regulations.

26. Defendants are recipients of federal funding under Section 504 and its implementing regulations.

27. Plaintiff is a qualified individual with a disability within the meaning of Section 504 and its implementing regulations because she meets the essential eligibility requirements, with or without reasonable modifications to Defendants' policies, practices, or procedures, for participation in the Primary Election of June 9, 2020.

28. Section 504 and its implementing regulations prohibit a recipient of federal funding from subjecting a qualified individual with a disability to discrimination or excluding him or her from participation in or denying him or her the benefits of its programs and activities solely by reason of his or her disability.

29. Defendants, by refusing to modify their policies, practices, or procedures to allow Plaintiff to participate in the Primary Election of June 9, 2020, have discriminated against her on the basis of her disability in violation of Section 504 and its implementing regulations.

## SECTION 2 OF THE VOTING RIGHTS ACT

30. Section 2 of the Voting Rights Act provides in part that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State . . . in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . ." 52 U.S.C. § 10301(a).

31. The "essence of a [Section] 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 238–39 (4th Cir. 2014) (internal quotation marks and citation omitted).

32. Defendants' refusal to modify their policies, practices, or procedures to allow Plaintiff to participate in the Primary Election of June 9, 2020, if not enjoined, will materially burden the right to vote, and will have an adverse and disparate impact on Plaintiff, an African-American voter in South Carolina. Black voters in South Carolina are more likely to work in jobs that expose them to COVID-19, less likely to have insurance or financial resources, and more likely to suffer

6

from severe health complications and/or to die from COVID-19 than white voters. Black voters are therefore significantly more burdened by the effects of the Defendants actions.

33. The disparate burden resulting from the Defendants actions is directly linked to social and historical conditions. South Carolina has a long history of voting-related discrimination, including the recent use of witness requirements, property qualifications, and photo ID laws. From 1965 to 2013, South Carolina was covered by the preclearance provisions of the Voting Rights Act. Since 2000, the U.S. Department of Justice has objected to eleven proposed voting changes in South Carolina due to those changes' potentially racially discriminatory purpose or effect.

34. African Americans in South Carolina continue to suffer from discrimination in other areas such as education, employment, and health, which hinders their ability to participate effectively in the political process. In particular, these discriminatory patterns render Plaintiff as an African-American voter more vulnerable to COVID-19, such that the Defendants' actions are particularly burdensome for African-American voters as a group relative to other voters. In addition, voting is racially polarized in South Carolina and African Americans do not hold elected office in portion to their population, resulting in state elected officials who are less responsive to the health, voting, and other concerns of African-American voters amid the COVID-19 crisis.

35. Defendants, by refusing to modify their policies, practices, or procedures to allow Plaintiff to participate in the Primary Election of June 9, 2020, abridged and denied Plaintiff as an African-American voter in South Carolina the right to vote.

### VI. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A. Assume jurisdiction over this matter;

B. Issue a declaratory judgment holding that Defendants have violated Plaintiff's rights under Title II of the ADA;

C. Issue a declaratory judgment holding that Defendants have violated Plaintiff's rights under Section 504 of the Rehabilitation Act of 1973;

D. Issue a declaratory judgment holding that Defendants have violated Plaintiff's rights under Section 2 of the Voting Rights Act of 1965;

E. Issue a temporary restraining order to prevent irreparable harm from occurring to her and her fundamental right to vote;

F. Award Plaintiff attorneys' fees and costs as permitted by law; and

G. Provide such other relief as is just and equitable.

Respectfully submitted,

| | |
|---|---|
| Deuel Ross* | */s/ Susan K. Dunn* |
| John Cusick* | Susan K. Dunn (Fed. Bar #647) |
| NAACP Legal Defense & | American Civil Liberties Union |
|    Educational Fund, Inc. | of South Carolina |
| 40 Rector Street, 5th Floor | Charleston, SC 29413-0998 |
| New York, NY 10006 | Tel.: (843) 282-7953 |
| Tel.: (212) 965-2200 | Fax: (843) 720-1428 |
| dross@naacpldf.org | sdunn@aclusc.org |
| | |
| *Motions for admission *Pro Hac Vice* forthcoming | *Attorneys for Plaintiffs* |